**223·15**

Court of Appeals

ORIGINAL

## PETITION FOR DISCRETIONARY REVIEW

NO. 09-14-00039-CR

RECEIVED IN
COURT OF CRIMINAL APPEALS
APR 29 2015
Abel Acosta, Clerk

Clifton James Taylor

V

State of Texas

Appeal From The 221st District Court of Montgomery County

(Trial Court NO. 13-09-09834CR)

FILED IN
COURT OF CRIMINAL APPEALS
MAY 04 2015
Abel Acosta, Clerk

Judgement Rendered

January 28th 2015

SCANNED
(CCA)

Pg. 1



# Parties To The Cases

Appellant: Clifton James Taylor

Attorney For Appellant At Trial:
Name: KAYE ELLIS STONE
Address: 1400 Woodloch Forest Drive Suite 300-3
          The Woodlands, Texas 77380

Attorney For Appellant on Appeal:
Name: Judith Shields
Address: 333 North Rivershire Suite 285
          Conroe, Texas 77304

Appellee:         The State of Texas
Attorney For The State At Trial:
Name: Bradlee Thornton
Address: 207 W. Phillips, Second Floor
          Conroe, Texas 77301

Attorney For State on Appeal:
Name: Nathaniel Munier
Address: 207 W. Phillips, Second Floor
          Conroe, Texas 77301



# Court of Criminal Appeals Judgement Panel:

Appellant counsel advised Appellant to send the transcripts with the information that consisted of Judgement Panel, to the court of Appeals requesting on extension. Therefore, Appellant does not have the Names of the Judgement Panel.



## Arguments

① Did the Court of Appeals Error In Holding that the Trial Court Did Not abuse Its Discretion In Denying Appellant's Motion For New Trial. When the trial court was Not Entitled To consider the Prior Conviction where the Evidence of the Conviction was Inadmissable Hearsay. The Underlying Sentence Was Void In Any Event, Because it did Not comply with the Minimum Sentence required by Law, Where the Trial Court Considered The Prior Conviction To Discredit the Appellant During the PSI hearing.

Wilson vs State 677 S.W. 2d 518 (tex. crim. App. 1984)

Gonzales vs State 527 s.w. 2d 540 (Tex. Cr. App. 1975)

② Ineffective assistance of Counsel.

③ Denied right to a fair trial.

④ No evidence.

⑤ Falsified Information by plantiff and Witnesses therefore Committing Perjury.



# Statement of the Case

Appellant was not indicted for the offense of Family Violence due to Appellant Signing a waiver of Indictment. The case was submitted to Trial by Judge which the Judge found Appellant guilty on 12-13-13. The trial Judge assessed punishment to 6 years imprisonment. Appellant appealed to the Court of Criminal appeals, which rendered a judgement on January 28, 2015, appeal # 09-14-00039-CR

No motion for rehearing was filed.

## Oral Arguments Requested:

Oral argument is requested due to falsified statements made against appellant. Appellant asks the Court of Appeals for an Oral argument so that the facts can be heard and argued oraly. Statements that were used against the appellant were fabricated by Plantiff and Witnesses. The Statements used against appellant were mere hearsay. No evidence was produced to prove if in fact the alligations of being enibriated, No alchhol test or blood drawn to prove these false allegations. Cansel was ineffective and caused harm to appellant which denied the right for a fair trial. Judge, counsels were all women which creates a conflict of intrest. Judge refused to accept the appellants creditbility, acusing appellant of lying, even though appellant proved that he was not lying, the Judge still rejected Appellants credibility as good. Appellant prays that Oral arguments be heard to discuss such crucial arguments that what perspectives can come from a mans point of view as well as women.



## Prayer for Relief:

In conclusion appellant prays that the proper relief should be granted, Proper Judgement Vacated, and A proper Judgement Rendered. Due to evidence being so unduly Pre-Judicial that it renders Trial Fundamentally unfair. Due process provides Mechanism For Relief. Wherefore, Appellant Prays that the court Grant Applicant Relief to which he may be entitled in this Proceeding.

Date April 22, 2015                    X Clifton J. Taylor



COURT OF CRIMINAL APPEALS OF TEXAS
APPLICATION FOR A WRIT OF HABEAS CORPUS
SEEKING RELIEF FROM FINAL FELONY CONVICTION
UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

## INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

Case No. _____
(The Clerk of the convicting court will fill this line in.)

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

APPLICATION FOR A WRIT OF HABEAS CORPUS
SEEKING RELIEF FROM FINAL FELONY CONVICTION
UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: Clifton James Taylor

DATE OF BIRTH: 06-28-1976

PLACE OF CONFINEMENT: TDCJ / Larry Gist

TDCJ-CID NUMBER: 1943166 _____ SID NUMBER: _____

(1)     This application concerns (check all that apply):

☑   a conviction          ☐   parole

☐   a sentence            ☐   mandatory supervision

☐   time credit           ☑   out-of-time appeal or petition for
                              discretionary review

(2)     What district court entered the judgment of the conviction you want relief from?
        (Include the court number and county.)

        221st District Court of Montgomery County

(3)     What was the case number in the trial court?

        13-09-09834 CR

(4)     What was the name of the trial judge?

        Honorable Lisa Michalk

Revised: January 1, 2014                    1

(5)     Were you represented by counsel?  If yes, provide the attorney's name:

_Yes. KAye Stone_

(6)     What was the date that the judgment was entered?

_December 13, 2013_

(7)     For what offense were you convicted and what was the sentence?

_Family Violence        6 yrs  TDCJ_

(8)     If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

_N/A_

(9)     What was the plea you entered? (Check one.)

☑ guilty-open plea          ☐ guilty-plea bargain
☐ not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

_N/A_

(10)    What kind of trial did you have?

☑ no jury                          ☐ jury for guilt and punishment

2

☐ jury for guilt, judge for punishment

(11)   Did you testify at trial?  If yes, at what phase of the trial did you testify?

_Yes. Trial by Judge_

(12)   Did you appeal from the judgment of conviction?

☑ yes                    ☐ no

If you did appeal, answer the following questions:

(A)   What court of appeals did you appeal to? _N/A_

(B)   What was the case number? _09-14-00039-CR_

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's
name:

_Yes. Judith Shields_

(D)   What was the decision and the date of the decision? _Denied January 28, 2015_

(13)   Did you file a petition for discretionary review in the Court of Criminal Appeals?

☐ yes          ☑ no _This is my Petition for Discretionary Review_

If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number? _N/A_

(B)   What was the decision and the date of the decision? _N/A_

(14)   Have you previously filed an application for a writ of habeas corpus under Article
11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                    ☑ no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number? _N/A_

3

**(B)** What was the decision and the date of the decision? _____N/A_____

**(C)** Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____N/A_____

_____

_____

_____

**(15)** Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                 ☑ no

If you answered yes, please provide the name of the court and the case number:

_____N/A_____

**(16)** If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                 ☑ no

If you answered yes, answer the following questions:

**(A)** What date did you present the claim? _____N/A_____

**(B)** Did you receive a decision and, if yes, what was the date of the decision?

_____N/A_____

If you answered no, please explain why you have not submitted your claim:

4

_____

_____

_____

_____

_____

(17)   Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.*
If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

_____

_____

**FACTS SUPPORTING GROUND ONE:**

During the Plantiff's testimony, the Plantiff lied and stated I picked her up with one hand around the throat up in the Air and threw her through a door. The Plantiff also stated that defentant crumpled up her cell phone with one hand. Clearly defendant is not capable of picking the Plantiff up and throwing her through a door, due to the fact she weighs too much. (160-180⁺lbs) Defendant is also not capable of crumbling up a cellphone with one hand as stated by Plantiff. Plantiff also stated that defendant was also enebrated from intoxication but defendant was never given an test to prove Intoxication and or blood was never drawn. Plantiff also testifies that defendant hardly ever drinks. Grant was also a witness who testified stating he recieved a scratch on his neck due

6

to the fact that the defendant swung his sword at him. Grants Statement is also a lie to the fact that the defendants sword is too sharp to cause a minor little scratch. Lauren Saver was also a witness who testified stating I punched her in the face and in doing so it caused her face to be distorted. Defendant Never touched Lauren. Plantiff and witness are all friends and live in the same neighborhood except for Grant who is Lauren Saver's brother. No evidence was proved in the pictures of Grant of the use of a sword that he had a scratch from the use of the Sword. Defendant's Sword was put in evidence but no blood was on the sword and NO DNA testing was done to prove the defendant used the sword. Lauren's pictures also proved no evidence that the defendant struck her in the face and distorted her face. Plantiff also had barely any marks on her neck to prove that she was picked

7

**GROUND TWO:**

_____

_____

**FACTS SUPPORTING GROUND TWO:**

_____

up with one hand around the throat and thrown through a door. Plantiff also claimed she was picked up with two hands around the throat and thrown through the other side of the room. Plantiff would have suffered serious neck injuries if that was true. (Jackson vs. Virginia 443 US. 307 99 S. Ct 2781, 2789.61 L.Ed 2d 560). Defendant was also harassed by the trial Court of a previous charge from Harris County Texas envolving the arrest of a hydrocodone. But defedant was convicted for Cocaine according to the probation record. The record from defendents case out of Harris County was from 1999 and clearly shows defendant was arrested for a hydrocodone but convicted for Cocaine. The Trial Court abused this privilage by telling

8

the defendant he was a liar and stated that defendant was also mocking the court. The Trial Court also stated that defendant was lying about his case in 1999 and what makes me belive your lying about your case Now. Defedant was able to prove he was Not lying about his case in 1999, but the Trial Court refused to hear it after sentencing was givin. The defendant was denied the right to a fair trial due to the fact the Court was represented by all women. Defendant's appeal Attorney involves a conflict of interest due to the fact defendant's Appeal Attorney was the presiding Judge's law partner. When defendant's appeal was denied, defendant's Appeal Attorney stated she belived that the Judge made the right descission. Defendant's Attorney at Trial was also inevective due to she urged the defendant to plead guilty and take the Trial by Judge. Both attorneys for the defendant were also women. (Strickland vs. Washington 466 U.S. 668, 80 L. ED 2d 674, 104 S. CT. 2052)

**GROUND THREE:**

_____

_____

**FACTS SUPPORTING GROUND THREE:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

11

GROUND FOUR:

_____

_____

FACTS SUPPORTING GROUND FOUR:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12

Rev. 01/14/14

Rev. 01/14/14

GROUND:

_____

_____

FACTS SUPPORTING GROUND:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14

15

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

## OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20_____.

_____
Signature of Notary Public

16

Rev. 01/14/14

## PETITIONER'S INFORMATION

Petitioner's printed name: Clifton Taylor

State bar number, if applicable: _____

Address: 3295 Fm. 3514

Beaumont, TX. 77705

_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, Clifton Taylor , am the applicant / petitioner (circle one) and
being presently incarcerated in Larry Gist/TDCJ , declare under penalty of
perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on April 21, , 20 15 .

Clifton Taylor

Signature of Applicant / Petitioner (circle one)

17

# In The

## Court of Appeals

## Ninth District of Texas at Beaumont

___

### NO. 09-14-00039-CR

___

**CLIFTON JAMES TAYLOR, Appellant**

### V.

**THE STATE OF TEXAS, Appellee**

___

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-09-09834 CR**

___

### MEMORANDUM OPINION

Clifton James Taylor ("Taylor") pleaded guilty to third-degree felony assault on a family member. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2) (West Supp. 2014). After a bench trial on punishment, the trial court sentenced Taylor to six years of confinement in the Texas Department of Criminal Justice, Institutional Division. In two appellate issues, Taylor argues that the trial court erred (1) in

1

denying his motion for a new trial and (2) in assessing attorney's fees. We overrule

issue one, sustain issue two, and affirm the judgment as modified.

FACTUAL BACKGROUND

The State indicted Taylor for "assault family violence[/]strangulation" for

conduct that occurred on or about September 14, 2013. Taylor pleaded guilty to the

charge. The trial court held a sentencing hearing on December 13, 2013, and after

hearing testimony, it pronounced Taylor's sentence. Several witnesses testified at

the hearing including Taylor, the victim (J.W.), three friends who were with Taylor

before and during the incident (Andrew, Lauren, and Grant), and Taylor's uncle.

J.W. testified that she and Taylor were in a "long-term relationship roughly

about five years." During their relationship, Taylor worked "odds and ends" but

not a full-time job. J.W. said Taylor had told her "he was arrested with a Vicodin

in his pocket in '99." J.W. also testified that Taylor's marijuana smoking was an

issue because "the purchasing of the marijuana obviously took a lot of money out

of the home."

J.W. explained that, on the night of September 14, 2013, she and Taylor

went to Andrew and Lauren's house, that Taylor was drinking, that he was "[v]ery

irritable[,]" and as the night progressed "[h]e became more angry." J.W. also

testified that Taylor was smoking marijuana that night. According to J.W., she and

2

Taylor got into an "altercation[,]" and J.W. testified that once they returned to their own home, Taylor "came up to me and he had the container of pork rinds in his hand and he proceeded to slam them repetitively in my chest, which consequently knocked me on the ground[.]" She said that shortly thereafter, Taylor began choking her. According to J.W., Taylor then started tearing the house apart and throwing things at her.

J.W. sent a message by phone to Lauren telling Lauren she needed help. J.W. told Taylor she was going to call the police, and that is when he grabbed the phone out of her hands and they started wrestling. He destroyed her phone and then his phone, crushing one phone with his hand and the other by "twisting it and throwing it on the ground." She testified further that he was "[v]ery angry, very belligerent, hateful[,] . . . completely out of control." She said that "[i]t was just progressively getting worse. . . . he was going to take the baby. He was drunk. . . . He kept destroying the house. He just kept repetitively destroying things." J.W. explained that:

> we ended up in a wrestling match again and I ended up on the floor on my back . . . and he was straddling on top of me and he had his hand on my throat choking me.
> And as he was choking me, I remember blacking out and laying there thinking that's how I was going to die. And the last time -- the last thing I saw before I blacked out was this horrific look in his eyes. . . .

3

J.W. testified that after Andrew and Grant arrived, Taylor "picked me up by my neck and threw me through my daughter's bedroom door." Andrew, Grant, and Taylor scuffled as Andrew and Grant "tried to pull [Taylor] off" of J.W. Her three children were crying and terrified. J.W. tried to leave with the children, but Taylor shoved her back on the ground twice. She explained further that

> The first time he pushed me, my arm locked up and I could feel shooting pains in my arm. And then once I got up and he pushed me the second time, my arm buckled from underneath me and I could feel my elbow break.

J.W. said that at the end of the night, she had blood "all over" her shirt and scratches on her neck. As a consequence of breaking her arm, she lost her job, and she was unemployed at the time of the trial. J.W. also testified that while Taylor was in custody awaiting trial, even though Taylor was under a "no contact" order, he attempted to contact her six times.

Andrew testified that Taylor and J.W. were at his house on the evening the assault occurred, along with Andrew, Andrew's wife Lauren, Lauren's brother Grant, and Grant's girlfriend Ann. Andrew testified that he thought Taylor was intoxicated that night, and he observed Taylor and J.W. arguing. Andrew said that Taylor became "[m]ore aggressive" toward J.W.

After Taylor and J.W. left, Lauren received a text from J.W. that said "[s]end your husband, please. Help." Andrew testified that he and Grant went to

4

J.W.'s house, and as they approached the house, they heard screaming. Andrew stated that when he walked into the house, Taylor had his hands around J.W.'s neck, and Taylor threw J.W. across the room; then he was on the floor on top of her, and he was choking her. Andrew testified that he pulled Taylor off of J.W., and then Taylor and Grant got into a confrontation. Andrew further testified that Taylor retrieved a sword from another room and then swung the sword at Grant. Finally, Andrew testified that when his wife Lauren showed up at J.W.'s house, Taylor punched Lauren in the face.

Grant also testified at the sentencing hearing. He explained that Taylor became violent with him and swung a sword at Grant. As a result of the incident, Grant's hand was broken. He had a cast on his hand for three-and-a-half weeks, which interfered with his ability to work.

Lauren testified that she received a text from J.W. "around 12:17 saying, 'Send your husband Andy here, please. Help.'" Lauren explained that when she arrived later, she saw J.W. in the car, trying to leave with the children, and Taylor jumped up on J.W.'s car. Taylor then hit Lauren on her chin area and "knocked [her] jaw out of place."

Taylor also testified at the sentencing hearing. He told the court that he did not recall most of the night in question because he was "way too intoxicated." He

5

did not remember hitting his wife with the food container, throwing her to the ground, strangling her, or throwing her through a door. However, he did remember destroying his wife's phone but not why he did so. He recalled the scuffle with Grant and Andrew but did not know at the time the reason for the scuffle. He denied hitting Lauren and stated he did not remember swinging a sword at anyone.

On cross examination, he remembered drinking and smoking marijuana when he was at Andrew and Lauren's house, but he did not remember wanting to drive home despite being intoxicated, or forcing J.W. to get into the car with him. Taylor testified that he previously had been "arrested for Vicodin[,]" not cocaine. He also testified he was convicted for "DWI back in '04." Taylor's uncle also testified that he understood Taylor's prior conviction was for prescription drugs.

Prior to delivering the sentence, the court addressed Taylor directly and stated: "you remember what everybody did to you but you don't remember what you did to everybody else. . . . I find that highly, highly questionable." The court further told Taylor that, in this situation

> you could have been charged for that sword with aggravated assault,
> . . . could have been charged with driving while intoxicated, . . . could
> have been charged with possession of marijuana, and . . . could have
> been charged for assaulting all of these people there -- all of that.
>
> And, instead, they went forward on the case against her, which
> is fine.

6

The court also observed that, based on the witnesses' testimony, "it looks like you stayed home, didn't work very much, and smoked pot all day." As to Taylor's own testimony, the court observed that he "minimized" his own actions, "downplayed" what he did, and "for some reason accountability is not getting in." The court stated that such minimization was "deeply troubling because that means you would do it again." Ultimately, the court sentenced Taylor to six years in prison, with credit for time served, and no fine. The six-year sentence is within the range of punishment allowed by the applicable statute for third degree felony assault. *See* Tex. Penal Code Ann. § 12.34 (West 2011).

Following sentencing, on December 31, 2013, Taylor filed a "Motion for New Trial and Motion in Arrest of Judgment," requesting a new trial on the basis of "newly discovered evidence" concerning a prior arrest. In his motion, Taylor alleged that:

> The defendant was charged by information on January 22, 1999, in Cause No. 803137 in the 339th District Court in Harris County, Texas for the offense of Possession of Hydrocodone, 1-4 grams. It appears that his probation judgment incorrectly stated the nature of the controlled substance, by referring to it as "Cocaine", . . . and there was no amendment to the information and no indictment.

At the hearing on the motion for new trial, the appellant filed an affidavit from his trial counsel stating that the appellant's previous conviction was for the offense of possession of hydrocodone, and not cocaine. Attached to the affidavit

7

was a copy of an information charging the appellant with possession of hydrocodone. The trial court conducted a hearing on the motion for new trial on January 15, 2014. The court then denied the motion for new trial, explaining that despite the alleged error regarding one of Taylor's prior arrests, "[t]he actual offense itself affected me more than any of that information, that I made my decision based on just the testimony of the victim, testimony of the other witnesses, and just the nature of the offense that was detailed." Taylor timely filed a Notice of Appeal.

## DENIAL OF THE MOTION FOR NEW TRIAL

Taylor's first issue on appeal is that the trial court abused its discretion by denying his motion for new trial. Taylor's motion was based on what he describes as "newly discovered evidence." Appellant contends that the new evidence bears on his credibility.

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012) (citing *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001)). "'We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable.'" *Id.* (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). An appellate court views the

evidence in the light most favorable to the trial court's ruling, defers to the trial court regarding credibility determinations, and presumes that all reasonable fact findings in support of the ruling have been made. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). A trial court abuses its discretion in denying a motion for a new trial when no reasonable view of the record could support the trial court's ruling. *McQuarrie*, 380 S.W.3d at 150; *Holden*, 201 S.W.3d at 763; *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

Motions for new trial based on grounds of newly discovered evidence are not favored by courts. *Drew v. State*, 743 S.W.2d 207, 225-26 (Tex. Crim. App. 1987). Texas Code of Criminal Procedure Article 40.001 provides "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006). In order for a defendant to be entitled to a new trial on the basis of newly discovered or newly available evidence, the following four-part test must be met: (1) the new evidence was unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to his lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Carsner v. State*,

444 S.W.3d 1, 2-3 (Tex. Crim. App. 2014) (citing *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003), and *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002)). The failure of the movant to establish any one of the four required elements for a new trial based on newly discovered evidence supports the trial court's denial of the motion. *See Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.) (citing *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd)).

The requirement that a movant show the newly discovered evidence was unknown to him at the time of trial is fundamental. *Tate v. State*, 834 S.W.2d 566, 571 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Neither appellant's motion for new trial nor his appellate brief suggests that the purported "newly discovered evidence," i.e., that Taylor's prior arrest was for hydrocodone or Vicodin and not for cocaine, was unknown to Taylor at the time of the sentencing hearing. Indeed, the record shows that the trial court heard testimony concerning whether Taylor's 1999 arrest was for possession of cocaine or for Vicodin. When the evidence was known and accessible to a defendant at the time of trial, the movant has not shown a proper basis for granting a new trial. *Estrada v. State*, 2005 Tex. App. LEXIS 10506, *21 (Tex. App.—San Antonio July 20, 2005, pet. ref'd) (mem. op.) (citing *Drew*, 743 S.W.2d at 227 n.14.). Additionally, Taylor does not argue or establish

that his failure to obtain the evidence was not due to his lack of diligence. Furthermore, as previously stated, a new trial should not be granted when the alleged "newly discovered evidence" is merely cumulative, corroborative, or collateral to testimony or evidence previously presented at trial. *Keeter*, 74 S.W.3d at 36-37. Evidence regarding his dispute as to the conviction for hydrocodone or Vicodin, rather than "cocaine," was already before the court as Taylor, J.W., and Taylor's uncle testified thereto, and it was in the charging instrument for the prior offense. Therefore, the "new evidence" that Taylor presented in his motion for new trial was merely cumulative, corroborative, or collateral to testimony or evidence previously presented at trial.

Finally, appellant fails to demonstrate in either his motion for new trial or in his appellate brief that the alleged "newly discovered evidence" would probably bring about a different result on another trial. When pronouncing Taylor's sentence, the court commented on inconsistencies in Taylor's memory concerning the events of September 14, 2013, and his apparent lack of accountability. At the hearing on Taylor's motion for new trial, the court explained the identity of the substance for which Taylor was previously arrested did not determine the sentence, but rather the court considered "[t]he testimony of the victim, testimony of the other witnesses, and just the nature of the offense that was detailed." The trial court

explained that "the actual offense itself" weighed most heavily in determining the sentence, and the court stated it "did not put a lot of emphasis" on evidence concerning prior convictions or probation. Appellant's statement in his appellate brief that the newly discovered evidence "surely would have affected" the outcome of his trial is conclusory and not supported by the record. The trial court could have reasonably concluded that the alleged newly discovered evidence suggested by appellant's motion, even if true, was not compelling enough to probably bring about a different result in a new trial. *See Wallace*, 106 S.W.3d at 108 (The Court affirmed the trial court's denial of a motion for new trial, despite appellate court's use of the wrong legal standard, because the new evidence, even if true, was not compelling enough to overcome the strength of the prosecution's case.).

Viewing the record in the light most favorable to the trial court's ruling, and deferring to the trial court's credibility determination, we conclude that a reasonable reading of the record supports the trial court's ruling and the trial court did not abuse its discretion in denying the motion for new trial. We overrule appellant's first issue.

## ATTORNEY'S FEES

In issue two, Taylor argues that after being found indigent, his status did not change before he was sentenced. He contends that the trial court erred in assessing $1,032 in attorney's fees in the judgment. The State agrees.

A trial court may tax the defendant with attorney's fees if there is a material change in the defendant's ability to pay attorney's fees between the date the trial court initially determined the defendant to be indigent and appointed trial counsel and the date of the final judgment. *See* Tex. Code Crim. Proc. Ann. arts. 26.04(p) (West Supp. 2014); *see also Roberts v. State*, 327 S.W.3d 880, 884 (Tex. App.— Beaumont 2010, no pet.).

In this case, the record shows that the trial court found Taylor to be indigent and appointed trial counsel before entry of the judgment. Following Taylor's sentencing, the trial court also appointed counsel to represent Taylor in his appeal. The trial court made no findings regarding whether any material change occurred in Taylor's status as an indigent defendant. Furthermore, the record does not reflect that Taylor's financial circumstances materially changed after he was found indigent. *See* Tex. Code Crim. Proc. Ann. art. 26.04(p); *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *Roberts*, 327 S.W.3d at 884. Therefore, we sustain issue two.

The Texas Rules of Appellate Procedure authorize this Court to render the judgment the trial court should have rendered. *See* Tex. R. App. P. 43.2, 43.3. Therefore, we modify the judgment the trial court rendered by deleting the award of $1,032 in attorney's fees as costs of court. Otherwise, we affirm the trial court's judgment as modified.

AFFIRMED AS MODIFIED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered January 28, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

14

lifton James Taylor
YC#194731166  135-57
st State Jail
15 Fm. 3514
umont, TX. 77705

Court of Criminal Appeals
P.O. Box 12308 Capital Station
Austin, Texas 78711